## POWERS v. THE CITY OF COUNCIL BLUFFS.

1. **Damages**: NUISANCE: CONTINUANCE OF.  Whenever a nuisance is of such a character that its continuance is necessarily an injury, and when it is of a permanent character that will continue without change from any cause but human labor, then the damage is an original damage and may be at once fully compensated.

2. ———: ———: SUCCESSIVE ACTIONS.  Successive actions are not allowed for damages resulting from negligence combining with a natural cause, however gradual the operation of the cause, and they will only lie where the defendant is continuously in fault.

3. ———: ———: MUNICIPAL CORPORATION: STATUTE OF LIMITATION. Where the defendant, a city, had constructed a ditch along a street by plaintiff's property in such a negligent and unskillful manner that his property was injured thereby, it was *held* that the damage resulting from the construction of the ditch was original damage, and that the right of action was barred in five years from the time when the injury to the property began.

4. **Practice**: WHEN COURT MAY DIRECT VERDICT.  The court cannot take a case from the jury if there is any conflict in the evidence, and only has the power to do so when a party offers no evidence, or all the proof on both sides points in the same direction.

*Appeal from Cass Circuit Court.*

THURSDAY, APRIL 19.

THE plaintiff is the owner of certain lots in the city of Council Bluffs, abutting on Green street, and has been since a time prior to the occurrence of the injury complained of. In 1859 the said lots were crossed by a meandering stream known as Indian Creek, which stream also flowed into Green street, and without crossing the street flowed nearly length-wise of it for quite a distance, leaving about twenty feet in width of the street for travel in the narrowest place.  In order to remove the stream from the street the city determined to cut a ditch along the side of the street and across the end of the plaintiff's lots where they abutted on the street. For this purpose the city obtained from the plaintiff a relinquishment of a right-of-way.  The ditch was cut, and the

stream was turned into it and was thereby much shortened and removed both from the street and the plaintiff's premises. This was done during the years 1859 and 1860. The ditch was extended to a county ditch, but was not cut as deep as the county ditch by about three feet. When the water of the Indian Creek ditch, therefore, flowed into the county ditch, there was a fall of about three feet. In not sinking the bottom of the Indian Creek ditch as low as the bottom of the county ditch the city committed a fault, for the soil was destitute of rock and sure to be cut away by the action of water. The fall at the county ditch made a cavity, and not only that, but cut backwards, up stream, or, to use the language of one of the witnesses, it *crawfished*. The cavity became wider as it extended up stream. It reached the plaintiff's lots about 1866, when he began to sustain damage from the action of the water. Prior to the commencement of this suit the ditch along the plaintiff's lots had become fifty feet wide and twelve feet deep. To confine the water within its proper channel and arrest its action in cutting and removing the soil, he has put in a wall, which has been successful.

This suit was brought by plaintiff to recover from the city the damage which he sustained. The city, among other things, pleaded the statute of limitations. There being no controversy as to the facts so far as the statute of limitations had any application, the court directed the jury to return a verdict for the defendant. The plaintiff appeals.

*Sapp & Lyman* and *Clinton, Hart & Brewer*, for appellant.

*E. E. Aylesworth* and *Montgomery & Scott*, for appellee.

ADAMS, J.—No suit could have been maintained until some actual injury was caused to the plaintiff by the action of the water, resulting from the improper construction of the ditch. Washburn on Easements and Servitudes, 591. But in 1866, if not earlier, the plaintiff's premises began to be injured; and he then, of course, had a right of action. The only ques-

tion in this case is as to the character of the damage. Was it as it accrued from day to day new damage? If so, the plaintiff was entitled under the evidence to recover some damages, although his right of action as to a part of the damages which he had sustained might be barred. We have to distinguish, then, between what must be regarded as original damages and what may be regarded as new damages.

In 3 Black. Com., 220, it is said that every continuance of a nuisance is held to be a fresh one, and that, therefore, a fresh action will lie. In *Staples v. Spring et al.*, 10 Mass., 72, action was brought to recover for damages which, it was alleged, the plaintiff had sustained by reason of his land being overflowed by defendants' mill-dam. It was held that, while plaintiff was barred from recovering for damage caused by the erection of the dam, he might recover for damage caused by its continuance.

1. DAMAGES: nuisance: continuance.

In *McConnell v. Kibbe*, 29 Ill., 483, the same doctrine is recognized. The defendant owned the lower story of a building, the plaintiff the upper stories. The defendant removed in his story a partition brick wall, whereby the plaintiff's part of the building was injured. WALKER, J., said: "The continuance of that which was originally a nuisance is regarded as a new nuisance."

As, however, the suit was brought for the creation of the nuisance and not its continuance, it was held that plaintiff could not recover, the cause of action for the creation of the nuisance having become barred.

In *Bowyer v. Cook*, 4 Manning, Granger and Scott, 236, the plaintiff, having previously recovered against the defendant for placing stumps and stakes on his land in a ditch, brought suit for continuing them in the ditch. It was held that he could recover.

In *Holmes v. Wilson et al.*, 10 Adolphus and Ellis 503, the defendants, as trustees of a turnpike road, had built buttresses to support it on the plaintiff's land. Although the plaintiff had already recovered for the creation of the nuisance, it was held that he might recover for its continuance.

The dividing line between the cases above cited and those in which the damages are .considered as having all accrued at once as a part of the original injury is not always clearly distinguishable.

In the *Town of Troy v. Cheshire Railroad Co.*, 3 Foster (N. H.), 83, the defendant had built its road partly over the highway. While it was held that plaintiff could recover only for the damages which had been sustained at the time of the commencement of the suit, yet it was considered that all the damages which plaintiff had sustained, or could sustain, accrued when the defendant's road was built, and that only one recovery could be had. This case is similar to the one last above cited, but distinguishable from it. The difference, however, consists in the fact that the railroad bed was deemed a permanent structure, in such sense that it was not to be presumed that the company would remove it. The turnpike buttresses were not of such character. So, too, in the case where the defendant had placed stumps and stakes in plaintiff's ditch, the obstruction was not permanent.

In the *Town of Troy v. Cheshire Railroad Co.*, above cited, BELL, J., said: "Wherever the nuisance is of such character that its continuance is necessarily an injury, and where it is of a permanent character that will continue without change from any cause but human labor, there the damage is an original damage and may be at once fully compensated."

The principle thus stated is sufficient to enable us to thread our way through any apparent difficulties which surrounded our path. In the light of it we can see that in a case of overflow from a mill-dam the injured party should be allowed to maintain successive suits. Somewhat depends on the way the dam is used. The injury, therefore, is not uniform. But, what is of controlling importance, the dam if not maintained will go down, as surely as the sun will go down, and the nuisance of itself will come to an end. Its duration will be determined by freshets and other forces which are contingent and, therefore, incalculable. It may, indeed, be so built that it should be regarded as permanent. In such case it is said that

the damage should be considered and treated as original. *The Town of Troy v. Cheshire R. Co.*, above cited.

While no infallible test can be applied to enable us to determine whether a structure is permanent or not, inasmuch as nothing is absolutely permanent, yet, when a structure is practically determined to be a permanent one, its permanency, if it is a nuisance and will necessarily result in damages, will make the damages original.

If we apply the principle above stated to the case at bar we must hold that the damages were original. The plaintiff's ground of complaint is that the ditch was improperly constructed. As constructed it resulted in the excavation of the plaintiff's lots. The damage consisted, not in excavating the lots, but in doing an act which resulted in their excavation.

The result too was a necessary one, the ditch remaining as constructed. The cause of the difficulty was a permanent one in that it would not grow less unless remedied by human labor. The case, therefore, is strictly within the rule applied in the *Town of Troy v. Cheshire Railroad Co.*, above cited. Nor does the rule afford any difficulty in the assessment of damages, which is another test for determining the question under consideration, or rather the consideration of the difficulty of assessing damages is another way of applying substantially the same test. If the cause of the injury is permanent the damages can be foreseen and estimated. If the cause of the injury is not permanent, if it depends upon human volition as the maintenance of a mill-dam, the damages cannot be foreseen and estimated. Where the buttresses were placed on the plaintiff's land, in *Holmes v. Wilson et al.*, above cited, the damages could not be foreseen and estimated. The defendants were trespassers, and, the structure not being necessarily permanent, it was not to be presumed that the defendants would continue the trespass. The presumption was that it would be discontinued. But there being no presumption as to the time when it would be discontinued the damages could not be foreseen and estimated.

The same principle lies at the foundation of the dictum in *McConnell v. Kibbe*, above cited, where the defendant owned

the lower story and the plaintiff the upper stories of a house, and the defendant removed a partition brick wall which was necessary for support. It could not be presumed that the defendant would allow the superincumbent stories to fall. It was to be presumed, therefore, that he would arrest the difficulty. With such a presumption the damages could not be foreseen and estimated.

When the fall in the stream in question had moved back from the county ditch to the plaintiff's lots and the creek ditch began to deepen and widen along those lots as it had been doing for six years on the land below, no especial foresight, we apprehend, was needed to predict the result. At all events it must be assumed that that may be foreseen which results from the ordinary and constant forces of nature.

The plaintiff's damage was susceptible of immediate estimation. No lapse of time was necessary to develop it. It was the difference between the value of his lots as they would have been if the ditch had been properly constructed, and the value of them as they were, with the ditch as it was. To reach this value, regard might be had to the reasonable cost of the remedy for the trouble, if the cost would not be greater than the probable damage which would ensue if no remedy were applied. The remedy, whether a wall or something else, it was the plaintiff's privilege to apply. The city could not do it better than he, and if the proper remedy was the erection of a wall on the plaintiff's premises, as the evidence tends to show, it was not the province of the city to apply it.

The case does not differ, so far as the principles in question are concerned, from any case where an injury has been received by one person from another's culpable negligence or unskillfulness. Its peculiar feature consists in the fact that the negligence complained of was injurious only through the gradual operation of an element of nature. But that element, the water, was a permanent and calculable force. If a mechanic constructs a building so unskillfully that it gradually falls down, no one would claim that the owner could have successive actions for damages during the fall. While the force and effects of the water in the case at bar could not,

perhaps, be quite as definitely predicted as the force and effects of gravitation in the case supposed, the difference, if any, is one of degree and not of kind.

We have seen no case where successive actions have been allowed for damages resulting from negligence combining with a natural cause, however gradual the operation of that cause. Successive actions are allowed only where the defendant is continuously in fault. It may be a fault of commission or omission, but if the latter it must be something else than an omission to repair or arrest an injury resulting from negligence or unskillfulness, unless the remedy is to be applied upon the wrong-doer's premises.

2. ——: ——: successive actions.

The appellant, it is true, contends that the fault of the city did not consist simply in negligence or unskillfulness; that the construction of the ditch was unauthorized. Such, we think, however, is not the fair import of the record. The relinquishment of the right of way executed by plaintiff and others is in these words:

" We the undersigned owners of property fronting on Green street, south side, hereby relinquish a right of way for Indian creek ditch.

"*Council Bluffs, July* 20, 1860."

It is claimed that a right of way was by the foregoing relinquishment in Green street, and not outside of it. But in our opinion that is not the meaning of the instrument. Besides, if Green street was an established street, there was no occasion for the relinquishment of a right of way in it. If it was not an established street, then the city had no right to dig the ditch for its improvement, or for any other purpose which we can see, and what was done was *ultra vires*, and the case has no foundation.

The only fault, then, of the city was its negligence or unskillfulness in the construction of the ditch, and the damages resulting therefrom must all be regarded as original damages.

It follows that the plaintiff's cause of action accrued more

than five years prior to the commencement of the suit, and is barred by the statute of limitations.

AFFIRMED.

## ON REHEARING.

. BECK, J.—Upon the announcement of the decision of this case in the foregoing opinion, plaintiff presented his petition asking for a rehearing, which was granted, and the cause was again submitted to us upon new arguments on behalf of both parties. We have given the questions, both of law and fact, upon which our conclusions presented in the foregoing opinion are based, such careful and patient consideration as their importance and the importance of the case demands. We have been able to reach no other conclusions than those stated in our first opinion. The positions of plaintiff, presented in the petition for rehearing, and his argument thereon demand brief consideration.

. The pivotal legal principle announced in the foregoing opinion we do not understand counsel for plaintiff to controvert. Certainly, we are of the opinion, it cannot be successfully controverted. Counsel, however, deny its applicability to this case. This principle is announced in the opinion in the following language, quoted from an authority referred to: "Whenever the nuisance is of such a character that its continuance is necessarily an injury, and when it is of a permanent character that will continue without change from any cause but human labor, there the damage is an original damage and may be at once fully compensated."

. After the ditch was constructed and the water of the creek first began to work upon plaintiff's land, its continuance was just as certain as that water would flow in the creek unless changes were made therein by human hands. Its continuance would just as certainly be an injury as that the floods of the creek would wash the soil and earth through which the ditch was dug. It follows that plaintiff's cause of action then accrued for all injury sustained, or that in the future would be suffered. The very cause of action for which this suit was brought then existed.

Counsel for plaintiff insist that the application of the stat-
ute of limitations to the case involved certain questions of fact
upon which plaintiff had the right to have the verdict of the
jury, and that the court, therefore, erred in taking the case
from the jury and directing a verdict for defendant. These
questions relate to: 1. The permanence of the ditch; 2. Con-
tinuance of the injury; 3. The date of the beginning of the
injury. That these questions were involved in the determin-
ation of the case cannot be denied, and that the court in deter-
mining each favorable to the defendant correctly decided we
do not doubt. No other conclusion could have been reached
than that the ditch would have continued, unless changed by
human hands, as long as the creek exists, and that it would
continue to wash away the lots of plaintiff. This conclusion
is established without conflict in the evidence, and is consist-
ent with and required by the very nature of the soil, the char-
acter of the creek and other things connected with the case.

The same is true in regard to the other question of fact,
namely, the date of the beginning of the injury. The evidence
shows beyond dispute that the first injury was sustained by
plaintiff in 1866. He so testifies; other witnesses so testify;
no witness gives evidence contradictory thereto, and counsel
for plaintiff in their first argument in this court admit it.
The period of the limitation of this action, beginning in 1866,
expired before the suit was commenced. Under this state of
facts the action of the court in directing a verdict for defend-
ant was correct.

It is true that the court is required to submit a case to the
jury, or rather cannot take a case from the jury, if there be
any conflict in the evidence; the parties have a
right to submit their case to the jury upon what-
ever evidence they offer, be it ever so inconsider-
able. But not so if a party offer no evidence, or all the proof
on both sides points in the same direction.

4. PRACTICE:
when court
may direct
verdict.

We are well satisfied with the conclusions reached in
the foregoing opinion, and adhere to the decision therein
announced.