L. E. and E. VALENTINE, Appellees, v. FREDERICK WIDMAN, Appellant.

**Drainage:** SURFACE WATERS: DIVERSION. The right given a landowner to drain into a general course of natural drainage does not authorize him to gather the water on his own land, which would naturally flow in another direction, and discharge it upon the land of his neighbor.

**Same:** LIMITATIONS. Where a drainage system did no damage to the land of an adjacent owner until it was enlarged and extended to a pond on the owner's land, an action brought within the statutory period following the extension was timely.

**Same:** DIVERSION OF SURFACE WATER: DAMAGES. Where surface water naturally drained into a pond on the owner's land and the natural drainage of the overflow was in two directions, the construction of a drain carrying an increased portion of the overflow in one direction and onto the land of another, causing him substantial damage, created a liability therefor. And in case the pond was never likely to overflow, but the owner by diverting the water so as to materially increase the flow onto the adjacent land was liable for the damage; but in case the pond overflowed at times and the natural course of the water was onto adjacent premises at the point where the same was discharged by the owner's drain, then no cause of action arose because of the drain.

**Same:** DAMAGES: EVIDENCE: INSTRUCTIONS. Where the evidence showed that a nuisance created by a private drainage system was abated by the establishment of a drainage district, and that a portion of plaintiff's land had been flooded for a few years prior thereto by defendant's private drain, and the evidence on the question of damage would have authorized a verdict for a substantial sum on the theory that the nuisance was permanent, the verdict as returned for a much smaller sum indicated that no allowance was made for a permanent nuisance, but rather for the damage caused prior to its abatement, and defendant was, therefore, in no position to complain of evidence of damage, in support of a permanent nuisance, or of instructions permitting recovery on that theory.
Evans, J., dissenting in part.

*Appeal from Hamilton District Court.*—HON. C. G. LEE, Judge.

WEDNESDAY, APRIL 10, 1912.

ACTION at law to recover damages for an alleged nuisance caused by casting water upon plaintiff's land. Trial to a jury, verdict and judgment for plaintiffs in the sum of $106.33, and defendant appeals.—*Affirmed.*

*D. C. Chase* and *Wesley Martin,* for appellant.

*Boeye & Henderson,* for appellees.

DEEMER, J.—Plaintiffs and defendant are the owners of adjoining tracts of land; plaintiffs owning the lower or servient estate and defendant the higher or dominant one. Defendant's land lies north and west of that owned by plaintiffs, and in its normal condition was wet and soggy, and part of it was covered with a large slough or pond. Some of this water drained southward, but the greater part of it went off to the north and east, and into a natural stream known as White Fox creek. The south part of defendant's land drained to the south and west and onto and upon plaintiffs' land. Several years ago a five-inch tile was laid from a highway on the south up through plaintiffs' land and onto the land owned by defendant, and thereafter this was replaced by an eight-inch one. Plaintiffs claim, however, and they introduced testimony to show, that neither of these drains did any harm, as they carried no appreciable amount of water, and as they did not connect with the large pond or slough on the north part of defendant's land they made no complaint thereof, and were content to let the same remain. In the fall of the year 1905 defendant took up the eight-inch tile, deepened the ditch in which it had been laid, and extended

it up to the big pond, and laid in the ditch a twelve-inch tile, thus bringing upon plaintiffs' land a large body of water from the pond and from the land lying north of it southward where it had not previously been wont to go, and discharged it upon plaintiffs' land. Against this plaintiffs protested without avail, and finally they were, as they say, compelled to have a drainage district established to take care of this water which district was established over defendant's objections and protest, and at an expense of something like $507 to the plaintiffs. This action is brought to recover the damages caused the plaintiffs by the digging of the ditch and the laying of the twelve-inch tile; and the damages asked in the petition for overflowing and submerging about twenty acres of plaintiffs' premises, making them untillable and unfit for cultivation. The amount of damages claimed was $1,000. Defendant denied that the drain caused any damage, claimed a right to maintain it by reason of prescription, and also pleaded the statute of limitations. The main propositions in the case are (1) that under the testimony plaintiffs had no right to recover; and (2) that no proper testimony as to damages was offered and nothing was shown which would justify any recovery. Around these two main propositions are several collateral ones which so far as controlling will be considered during the course of this opinion.

I. For defendant, it is contended, that the tile drain complained of was laid in the natural course of drainage, and that by reason of the provisions of section 1989-a53

1. DRAINAGE: surface waters: diversion.

of the Code Supplement plaintiffs have no right to complain. The section referred to reads as follows: "Owners of land may drain the same in the general course of natural drainage, by constructing open or covered drains, discharging the same into any natural water course or into any natural depression, whereby the water will be carried into some natural water course, and when such

drainage is wholly upon the owner's land he shall not be liable in damages therefor to any person or persons or corporation. Nothing in this act shall, in any manner, be construed to affect the rights or liabilities of proprietors in respect to running waters or streams." The law premise involved in this contention is not the subject of dispute; but the fact proposition is challenged. A careful consideration of the testimony leads us to the conclusion that a jury was justified in finding that the drain in question, while laid in the natural course of drainage from the south part of the defendant's land, was extended up to the big pond or slough and made to carry the water therefrom which did not go that way before the drain was laid, but naturally flowed off to the north and east and into White Fox creek. No purpose would be subserved in setting out this testimony, and we content ourselves with the conclusion stated. Even under the statute quoted, the defendant would have no right to gather up the water on his own land which did not theretofore have an outlet to the south, and discharge the same at a different place and in a different manner than it had gone before. *Everett v. Christopher,* 125 Iowa, 668; *Holmes v. Calhoun County,* 97 Iowa, 360; *Dorr v. Simmerson,* 127 Iowa, 551; *Sheker v. Machovec,* 139 Iowa, 1; *Wirds v. Vierkandt,* 131 Iowa, 125; *Neuhring v. Schmidt,* 130 Iowa, 401; *Hull v. Harker,* 130 Iowa, 190; *Kopecky v. Benish,* 138 Iowa, 362. The trial court properly submitted this issue to the jury, and it manifestly found for the plaintiffs.

II. The two affirmative pleas relied upon by defendant, to wit, that of prescription and the statute of limitations, may be considered together. Doubtless defendant

2. SAME: limitations.

secured the right by user and otherwise to maintain the smaller tiles which he originally laid; but a jury was justified in finding that neither of these drained any of the water from the large pond or slough, and that no actionable wrong was done to

plaintiffs' land until the ditch was extended to this pond and the large twelve-inch tile laid therein. This was not done until the fall of the year 1905, and this action was commenced October 8, 1909. There is no merit in either contention.

III. Instructions 5 and 5½, given by the trial court, are complained of. They read as follows:

(5) If the land which defendant drained by means of the tile complained of discharged its surface water into a basin or pond on defendant's land, which pond or basin had an outlet for its overflow water in both directions in the course of natural drainage—that is, part of the overflow water was naturally discharged over plaintiffs' land and part of the overflow was naturally discharged to the northeast away from plaintiffs' land, and the defendant, by tiling, caused an increased portion of said overflow water to be discharged upon plaintiffs' land, and such increased volume so materially increased the flow of water upon plaintiffs' land as to cause material or substantial damage to plaintiffs' premises which would not have resulted from water lawfully cast thereon—then defendant would be liable for such damage so caused, unless you find that plaintiffs' claim for such damage is barred by the statute of limitations.

*3. SAME: diversion of surface water: damages.*

(5½) If the land which defendant drained by means of the tile complained of discharged its surface water into a slough or pond on defendant's land, which slough or pond was so deep and large that the surface water therefrom never had overflowed, and in its natural condition the water therefrom never would overflow and be cast upon plaintiffs' land, the defendant, by constructing the improvement complained of, would be guilty of diverting such water as was carried therein, and, if the same was diverted in such quantities as to materially increase the flow on plaintiffs' land and cause substantial injury, then defendant will be liable in this case, unless he has established his defense of the statute of limitations. If, however, the said pond or basin did at times, though seldom, overflow, and the natural course of drainage for all of

the overflow water was to the south and onto plaintiffs' premises, at the place substantially where the same was discharged by defendant's tile, then plaintiffs can not complain in this case, and your verdict should be for the defendant.

These instructions seem to be correct, and, as there was testimony justifying such a charge, no error was committed in giving them. Neither the law nor good husbandry requires one to take water which does not naturally flow in his direction; and, if another gathers it up and discharges it upon him, he is liable for the damages done. Although one may be the owner of lower land, he is not bound to take water which has been diverted from its natural course of drainage. The main point of difference between counsel in this connection is not so much over the law as upon the facts. We are constrained to hold that the testimony was such as to take the case to a jury and with its conclusion we should not interfere.

IV. One of the plaintiffs' witnesses testified, without objection, that the land was worth $75 per acre before the large tile was put in and $65 per acre just after it was laid. When attempt, to prove this same matter by, another witness, was made, objections that it was irrelevant, incompetent, immaterial, and not the proper measure of damages were interposed, but overruled. No other damages were proved save, there was testimony, to the effect that twenty-five acres of plaintiffs' land were rendered unfit for cultivation for four years and until a public drainage district was estalished upon plaintiff's petition some time in the year 1909. Still another witness testified, without objection, to the difference in the value of the lands before and after the construction of the drain. A witness for defendant testified that the land was worth just as much after the large tile was put in as before; and the record shows that, since the establishment of the drainage district all the water is carried off,

4. SAME: damages: evidence: instructions.

the ponds on defendant's land are dry, and the land fit for
cultivation, and that plaintiffs' lands have also been re-
claimed, but that, this has cost the plaintiffs more than
$500.

As bearing upon the measure of damages, the trial
court gave the following instruction: "(8) If you find the
plaintiffs entitled to recover in this case, the measure of
their recovery will be the difference between the fair mar-
ket value of their premises immediately before the con-
struction of the tile drain complained of in plaintiffs' peti-
tion, and the fair and reasonable market value of said
premises immediately after the construction of the same.
Upon such amount you will compute interest from October
8, 1909, at the rate of 6 per cent per annum, and said
amount, with interest to this date, will be the amount of
your verdict if you find for the plaintiffs." The ruling
upon the objections to the testimony and the giving of the
instruction were excepted to, and this constitutes the
second main point relied upon for appellant.

The trial court also gave this instruction with refer-
ence to the permanency of the drain: "(7) You will
find that the drain or improvement referred to in the
last paragraph was permanent if it was of such character
when put in, it was intended to be and in fact was such a
permanent structure as would, if not changed by the hand
of man, continue and operate as a drain indefinitely and
without known limit in the future; but if the same was
of such a nature and so constructed that it would natur-
ally at some time, by the action of the water or by in-
filtration, become clogged with dirt or rubbish, and thus
become practically ineffective and require a material re-
pair, taking up or rebuilding, then the same would not be
a permanent improvement or structure." The thought of
the entire instructions was that, if this drain was perma-
nent in character, the rule of damages given in instruction
8 should apply, unless the claim was barred by the statute

of limitations (which latter proposition was covered by other instructions not necessary to be quoted). Appellant's counsel make the broad claim that, no matter whether the drain constructed by defendant be temporary or permanent in character, the rule of damages is not the difference in the value of the land; but it is either the difference in the rental value or the value of the crops destroyed or other direct damage caused by each particular flood. Upon no question in the law is there so much uncertainty as upon the measure of damages. In some cases we have intimated, if not held, that plaintiff has an election in such matters unless it be found that by reason of the permanency of the structure the statute of limitations has barred all action. See *Risher v. Acken Coal Co.*, 147 Iowa, 459; *Hollenbeck v. City of Marion,* 116 Iowa, 69. On the other hand, we have held that if the structure is not permanent, or if the nuisance may be readily abated by the hand of him who established it, the damages are not to be measured by the loss of value in the land. *McGill v. Pintsch Compressing Co.*, 140 Iowa, 429; *Ferguson v. Firmenich Co.*, 77 Iowa, 581; *Randolf v. Bloomfield,* 77 Iowa, 52; *Shirley v. Railroad*, 74 Iowa, 169; *Loughran v. City,* 72 Iowa, 382; *Vogt v. City of Grinnell*, 123 Iowa, 332. And in still other cases we have held that, if the nuisance is distinctly permanent, the measure of damages is the decrease in the value of the land. *Risher v. Acken Coal Co.*, 147 Iowa, 459; *Harvey v. R. R. Co.*, 129 Iowa, 465.

If, then the nuisance was a permanent one, plaintiffs had the right to elect as to the measure of damages which they would claim. What, then, is a permanent nuisance? Our most recent pronouncement upon this question is as follows:

The mere fact that the city sewers were of permanent construction did not render the nuisance occasioned by them permanent also, for the municipality had the right at any time to abate it. In this respect cases like the present one

differ from *Powers v. City of Council Bluffs*, 45 Iowa, 652, for there, as was observed in *Hunt v. Iowa, Central Ry.*, 86 Iowa, 15, 'the whole injury was regarded as having occurred at one time, and, that time having been more than five years prior to the commencement of the suit, it was held to be barred. The injury was of such a character as to be beyond the defendant's power to remedy. It would be compelled to go onto the lands of others to erect barriers to prevent the damage. In this case, as is shown by the evidence, the remedy is in the defendant's own hands by work done upon its own land.' Again, it was pointed out in *Bennett v. City of Marion*, 119 Iowa, 473; that the injury in the *Powers* case was beyond the city's power to repair. 'The remedy to be applied there, if any, was the construction of a wall on plaintiff's premises, where defendant had no right to go. Here the remedy could be applied on defendant's own premises, and there can be no doubt of its duty to abate the nuisance.' As was said in *Hollenbeck v. City of Marion*, 116 Iowa, 70: 'Modern scientific research has discovered means of disinfecting and deodorizing sewage so that it is practically innocuous. . . . While the system may be said to be permanent, it does not appear that the nuisance created thereby may not at any time be abated by the defendant or by the court.' See, also, *Pettit v. Town of Grand Junction*, 119 Iowa, 352, and *Costello v. Pomeroy*, 120 Iowa, 213, where it is said that the wrong considered in *Powers v. City of Council Bluffs, supra,* and other like cases, consisted, not in creating a nuisance where the party had no right to be, but in negligently making an improvement where the right to construct it existed, and also that the doctrine of those decisions ought not to be extended. The nuisance consists not in the construction of the sewers in an illegal manner, nor where the city had no right to place them, but in pouring the filth from them into this stream instead of destroying it by filtration through beds of sand, and the use of a septic tank, thereby rendering the sewage innocuous. Indeed, this is precisely what the city did when threatened with a suit. A temporary excavation for filtration was made immediately and an appropriate tank, adequate for the disposal of all the sewage, to be completed by the 1st of December following, contracted for, thereby

demonstrating that the nuisance was not permanent. A nuisance can not be permanent which can be abated without unreasonable expense by the party creating it. (*Vogt v. Grinnell, supra.*)

The original doctrine was thus stated in *Powers v. City of Council Bluffs,* 45 Iowa, 652.

After the ditch was constructed and the water of the creek first began to work upon plaintiff's land, its continuance was just as certain as that water would flow in the creek unless changes were made therein by human hands. Its continuance would just as certainly be an injury as that the floods of the creek would wash the soil and earth through which the ditch was dug. It follows that plaintiff's cause of action then accrued for all injury sustained, or that in the future would be suffered. The very cause of action for which this suit was brought then existed.

In *Costello's* case, cited in *Vogt v. Grinnell, supra,* which was a suit in equity to enjoin an alleged nuisance, it was held that the tile drain there involved was not such a permanent nuisance that plaintiff's action was barred. There was no showing in that case, however, as to when any damage resulted from the laying of the tile. But in *Kopecky v. Bemish,* 138 Iowa, 362, and *Sheker v. Machorec,* 139 Iowa, 1, we expressly held that the measure of damage was the difference in the value of the land before and after. The result of this examination of the cases indicates that no hard and fast rule has been adopted and that much depends upon how the question arises.

In *Harvey's* case, *supra,* we said with reference to such objections as were here interposed:

Upon the trial in the court below the plaintiff offered testimony as to the depreciation in the value of her land, but in most cases fixed the date for the comparison as that of the completion of a railway embankment, instead of the date of the flooding of the land. In one instance, however, the witness, one J. Buffnam had his testimony directed

to the date of the flood, and, while the examination was somewhat indefinite, it was sufficient, we think, to take the question to the jury. The testimony as to the value of the land at the time of the construction of the embankment, which was within a year or less before the alleged injury, was perhaps objectionable if the case was being tried as one for continuing damages; but no specific objection was made thereto as being too remote. Plaintiff was presenting her case evidently upon the theory that her damages were original, and, if defendant wished to raise the point that they were continuing, we think it should have made its position clear, and, failing to do so, it can not accomplish a successful ambuscade under cover of a general objection that the evidence is 'incompetent, irrelevant, and immaterial, and not a correct measure of recovery.' In the absence of any demand by defendant that the damage be assessed as original rather than continuing, there was no error in the admission of the testimony offered which would justify us in holding that the case should not, in any event, have been submitted the the jury. *Hollenbeck v. Marion,* 116 Iowa, 70.

We are not now attempting to announce a rule for all cases. It is enough for the present to dispose of the one at hand and to say that on the entire record defendant is not entitled to complain, unless it be for another proposition relied upon by him to the effect that as the nuisance was abated after the commencement of the suit, but before trial, by the drainage proceedings, the damages should not have been assessed as if the nuisance were a permanent one. Hereto there is considerable confusion in the cases. In some of them it has apparently been held that one may have judgment for damages as for a permanent nuisance and an order for immediate abatement in the same suit. *Miller v. K. & D. R. R.,* 63 Iowa, 680; *Platt v. C. B. & Q. R. R.,* 74 Iowa, 127; *Downing v. Oskaloosa,* 86 Iowa, 352; *Harvey v. Railroad,* 129 Iowa, 465. This by reason of the provisions of section 4302 of the Code. But in *Steber v. Railroad,* 139 Iowa, 153, this question was mooted and left undecided.

We shall not now make any definite pronouncement upon the proposition, for the reason that the verdict of the jury clearly shows that nothing was allowed by way of damages for an indefinite future continuance of the nuisance. The verdict was for $106.33, and the testimony tended to show a continuous flooding of at least twenty acres of plaintiffs' land for four years. Had the jury taken plaintiffs' testimony as a basis for its allowance of damages on the theory that the nuisance would always exist, it should have allowed something like $2,000. The size of the verdict is a clear demonstration that the jury did not allow anything, by way of damages, for a permanent nuisance continued indefinitely into the future. With the alleged nuisance fully abated, the lands of both parties now redeemed and a small verdict for damages done after the large tile was laid and before the nuisance was abated, it would seem that the parties should be content; but they are not, and in consequence we have not attempted to do more than to demonstrate that defendant has no cause for complaint. The jury evidently believed plaintiffs' witnesses, who testified, that the water from the pond never ran down and upon plaintiffs' land before the laying of the large tile, and that defendant should pay the damages done during the four years the water was cast upon plaintiffs land.

Finding no prejudicial error, the judgment must be, and it is, *Affirmed.*

EVANS, J., (dissenting in part). I am not ready to agree to the correctness of instruction No. 5 given by the trial court. Whether it was prejudicial I need not consider.