MILDRED CONKLIN, Appellant, v. CITY OF DES MOINES, Appellee.

**WATERS AND WATERCOURSES:** Diverting Water from Natural
1   Drainage. A municipality which diverts large quantities of surface water out of its ordinary and natural course of drainage is liable for the resulting drainage.

**WATERS AND WATERCOURSES:** Surface Waters—Damages for
2   Non-Permanent Overflow. Damages for the wrongful but non-permanent overflow of lands are measured by the extent to which the fair rental value has been affected.

**NUISANCE:** Recovery of Cost of Abating Nuisance. One who has
3   created a nuisance upon the land of another by wrongfully overflowing the land with diverted drainage may not, *on evidence which would lead the jury into the field of pure speculation,* be held liable to the injured party for the amount of a special assessment subsequently levied upon said lands by reason of the establishment and construction of a public drainage improvement thereon, on the theory that said nuisance solely necessitated said improvement, and that said assessment, therefore, represented the cost to the injured party of abating said nuisance.

*Appeal from Polk District Court.*—W. S. AYRES, Judge.

SEPTEMBER 30, 1918.

ACTION for damages on account of the flooding of plaintiff's land. Judgment in favor of defendant for costs upon

a directed verdict in its favor was entered in the court below.—*Reversed.*

*S. B. Allen*, for appellant.

*H. W. Byers*, *Eskil C. Carlson*, and *Earl M. Steer*, for appellee.

PER CURIAM.—Plaintiff is the owner of a 44-acre tract of land, located south of the Rock Island railroad tracks and east of Thirtieth Street in the city of Des Moines, which is used for agricultural purposes. Consid-

1. WATERS AND
WATERCOURSES:
diverting wa-
ter from nat-
ural drainage.

erable land lying northwest thereof was formerly low and subject to overflow. In 1877 or 1878, the owners of this low land, including plaintiff, for the purpose of draining the same, by joint contribution constructed an open ditch from a point near the railroad, southeast a distance of several miles, intersecting with Four Mile Creek. In 1905, the defendant city constructed what is known in the evidence as the Seventh Ward, or Fraley, Ditch, commencing with and extending through some large ponds north of the railroad, and terminating at a culvert on the north side thereof, immediately opposite the open end of the joint private ditch above mentioned. This ditch was of considerable length, and crossed numerous lots in the city not owned by it. Originally, the ponds drained by the Fraley Ditch covered considerable territory, and, during the rainy season, contained much water, which, after such quantity as could, in the natural course of drainage, flow out, gradually disappeared during the dry season, by the process of absorption and evaporation. In 1909, the board of supervisors of Polk County established a drainage district, the boundaries of which included the plaintiff's, with other, lands south and north of the railroad track. The ditch constructed as a part of this improvement commenced at the outlet of the

Fraley Ditch, and extended southeasterly, substantially along the line of the private ditch above referred to, intersecting with, and emptying into, Four Mile Creek. We gather from the evidence that this latter ditch effectually drains plaintiff's, and the other lands, in the vicinity thereof.

This action was brought to recover damages caused by the alleged increased quantity of water thrown upon plaintiff's land by the Fraley Ditch, and also the amount assessed against the same for her portion of the cost of the public drainage improvement. The court sustained defendant's motion, made at the close of plaintiff's testimony, and directed the jury to return a verdict in its favor.

I. One of the grounds of the defendant's motion was that the evidence failed to show that the negligence or alleged wrongful act of the defendant in constructing the Fraley Ditch was the proximate cause of plaintiff's damages, or that she would not have suffered to the same extent had this ditch not been constructed. The evidence, however, as above stated, showed that the ponds drained by the Fraley Ditch covered a considerable area, and, at certain seasons of the year, large quantities of water gathered therein; that, while a small part of this water may have ultimately passed into the private ditch, and may have occasionally overflowed a small portion of plaintiff's land, yet the jury may well have found that the amount of water thrown thereon by the Fraley Ditch was greatly increased, that same was diverted from the natural course of drainage, and that the value of her land, for purposes of cultivation, was materially impaired.

The law is well settled in this state that the dominant owner may, by discharging the same upon his own land into a natural watercourse, drain surface water upon the land of the servient owner, but cannot gather large quantities of water out of the ordinary and natural course of

drainage, and discharge the same upon the servient estate, to its substantial damage, in largely increased quantities, or at a different place or in a different manner than it would usually and ordinarily have gone, in the natural course of drainage. *Kaufman v. Lenker,* 164 Iowa 689; *Obe v. Pattat,* 151 Iowa 723; *Martin v. Schwertley,* 155 Iowa 347; *Valentine v. Widman,* 156 Iowa 172; *Jontz v. Northup,* 157 Iowa 6; *Miller v. Hester,* 167 Iowa 180; *Pascal v. Hynes,* 170 Iowa 121; *Thomas v. City of Grinnell,* 171 Iowa 571; *Cowley v. Reynolds,* 178 Iowa 701; *Lamb v. Stone,* 178 Iowa 1268; *Pascal v. Donahue,* 170 Iowa 315; *Durst v. Puffett,* 181 Iowa 14; *Brightman v. Hetzel,* 183 Iowa 385; *Pester v. Smith,* 167 N. W. 580 (not officially reported).

Whether a largely increased quantity of water, diverted from its natural course, was gathered into the Fraley Ditch and discharged upon plaintiff's land in such a way as to overflow and injure the same, were questions of fact for the jury, and plaintiff was entitled to have the same submitted thereto. Abundant evidence was offered tending to show that, before the construction of the Fraley Ditch, but a small part of plaintiff's tract was subject to overflow, and that thereafter, a large portion thereof was frequently overflowed and rendered unfit for cultivation.

II. A further ground of defendant's motion for a directed verdict was that no evidence was offered from which the amount of plaintiff's damages, if any, could have been

2. WATERS AND WATERCOURSES: surface waters: damages for non-permanent overflow.

determined by the jury, and that the evidence sought to be introduced upon this point was not based upon the proper measure thereof. The measure of damages, where the nuisance is of a permanent character, is ordinarily the difference in the value of the land immediately before and immediately after the creation of the nuisance. The rule as applied to this class of cases is fully discussed in *Irvine v. City of Oelwein,* 170 Iowa 652, 655, and *City of Ot-*

*tumwa v. Nicholson,* 161 Iowa 473, and need not be further considered in this case.

Plaintiff sought to offer evidence to show that her lands were permanently damaged by the Fraley Ditch, but the court expressed doubt as to the true measure of damages, and requested counsel to proceed with some other branch of the case until the court was further advised. Counsel for plaintiff acquiesced in this suggestion, and did not again seek to introduce evidence upon this point. The court did not, as counsel for plaintiff asserts, exclude the testimony offered, and made no final ruling thereon. Counsel, if he believed same admissible, should have again called the matter to the court's attention, and obtained a final ruling on the point.

Plaintiff did, however, attempt to introduce evidence tending to show depreciation in the rental value of the land; but, upon objection of counsel, this evidence was excluded by the court. Some of the questions propounded were, perhaps, not technically correct, but came fairly within the rule. This testimony should have been admitted. Whether plaintiff was entitled to recover damages upon the theory of a permanent injury to her land or not, she was, if she elected to sue therefor, entitled to recover the depreciation in the rental value of her premises. *Hollenbeck v. City of Marion,* 116 Iowa 69, 79; *Risher v. Acken Coal Co.,* 147 Iowa 459; *Hastings v. Chicago, R. I. & P. R. Co.,* 148 Iowa 390, 395.

Evidence was received tending to show that the rental value of the land prior to the construction of the ditch was $3.50 an acre, and that, except for one year, plaintiff thereafter received this sum as cash rent; but it is claimed that the land was not cultivated one year because of the constant flooding thereof from the Fraley Ditch. The court should have permitted plaintiff to show the fair and reasonable rental value of the premises before the ditch was

constructed, and its rental value as affected thereby.

III.   In a separate count of her petition, plaintiff asked judgment for $1,000, the amount assessed against her land in the public drainage proceedings.   Recovery upon this item is sought upon the theory that the same represents the cost to her of abating the alleged nuisance.   Counsel argues that it was the duty of plaintiff to abate the nuisance. if possible, and thereby reduce the damages on account thereof.   We have held that this duty exists in some cases.   *Hollenbeck v. City of Marion,* 116 Iowa 69; *Bennett v. Town of Mt. Vernon,* 124 Iowa 537.

3. NUISANCE: recovery of cost of abating nuisance.

Plaintiff did not, however, cause the nuisance to be abated, and the assessment against her property is presumptively the portion of the total cost of the drainage improvement that should equitably be borne by her land. Whether the abatement of the nuisance by a public improvement would deprive her of the right to recover damages as for a permanent nuisance, if shown, is a question not presented upon this appeal; and, while it has been referred to in some of our prior decisions, no definite announcement was made thereon.   *Valentine v. Widman,* supra; *Steber v. Chicago G. W. R. Co.,* 139 Iowa 153.

The exact boundaries of the drainage district are not shown in the evidence, unless by Exhibit 2, certified to this court.   We understand from this exhibit that much or all of the low land drained by the Fraley Ditch is included within the drainage district, together with a large area not apparently affected by the Fraley Ditch.   Lands for the purpose of assessment for drainage purposes are classified upon a percentage basis, and without special reference to the expense of constructing the improvement across, or in the vicinity of, any given tract.   Other matters may be taken into consideration by the committee appointed to classify lands for assessment.   *Zinser v. Board of Supervisors,* 137

Iowa 660; *Jackson v. Board of Supervisors*, 159 Iowa 673; *Munn v. Board of Supervisors,* 161 Iowa 26. It would, therefore, be manifestly impossible for a jury to determine the cost to plaintiff of the abatement of the nuisance by a public drainage improvement. To permit the jury to do so would open up a field of speculation only.

Counsel also argues that the necessity for the establishment of a public drainage improvement arose solely because of the wrongful act. of the defendant in excavating the Fraley Ditch, and discharging large quantities of water from ponds upon the lands of plaintiff and others. Possibly the necessity of excavating a ditch north of the Rock Island railroad was obviated by the Fraley Ditch, but a jury could hardly determine whether a drainage district would have been established by the board of supervisors if the Fraley Ditch had not been dug. The land affected thereby, as we understand the exhibits certified to this court, is also included in the drainage district; and, as the ponds were probably most economically drained, along the route selected, plaintiff's tract would, in any event, on account of its elevation, and the occasional overflow of a part thereof, probably have been included in, and assessed for, an equitable portion of the cost of any drainage improvement established for the reclamation of the land lying within the boundaries. of the established district. The land lying to the north of plaintiff's is low, and required drainage, and the boundaries of the district extend a considerable distance on each side of plaintiff's land. Clearly, plaintiff is not entitled to recover, as damages in this case, the amount with which her land was charged in the drainage proceedings.

For the error pointed out, the judgment of the court below is—*Reversed.*

PRESTON, C. J., LADD, EVANS, SALINGER, and STEVENS, JJ., concur.