SARAH M. CRESAP, Appellee, v. JOHN M. LIVINGSTON et al., Appellants.

DRAINS:  Private Drainage—Casting Unusual Quantity of Water on Lower Owner.  An 80-acre lake, having, in part, well defined banks, a watershed of at least 1,500 acres, and a natural course of drainage in times of high water, may not be drained to the extent of lowering the ordinary water level ten inches, and carrying said water and the water at flood times out of their natural course of drainage and into the drainage improvement of a lower landowner, to the substantial damage of said latter owner, even though, without said improvement on the higher land, *some* of said water would, in time of high water, reach said lower improvement.

*Appeal from Fremont District Court.*—EARL PETERS, Judge.

DECEMBER 13, 1921.

REHEARING DENIED MARCH 17, 1922.

ACTION for an injunction, to restrain the defendants from diverting the waters of White Lake.  Decree was granted as

prayed by. plaintiff, and defendants appeal. The facts appear in the opinion.—*Affirmed.*

*D. W. Livingston, R. W. Hickman,* and *George H. Mayne,* for appellants.

*Tinley, Mitchell, Pryor, Ross & Mitchell* and *L. R. Forsyth,* for appellee.

FAVILLE, J.—White Lake is a body of water situated in Sections 16 and 21, in Township 68, Range 43, Fremont County. Appellants own certain lands bordering upon said body of water, as well as other land in that vicinity. Appellee is also the owner of certain lands in the same township, adjacent to lands owned by appellants. The accompanying plat shows the general situation in respect to the matters involved in this case:

The lands marked on the plat by the letter "L" are lands of the appellants, and those marked by the letter "C" are lands belonging to the appellee.

White Lake covers an area of about 80 acres. The basin which drains into White Lake is estimated in the evidence as from 1,000 to 2,000 acres. The lake is shallow, and with well defined banks on the east side. These banks gradually decrease toward the south, and, at the southern extremity of the lake, practically disappear. The evidence tends to establish that, in times of high water, when the lake overflows, the natural course of the flow of the surplus water of the lake is to the south and southeast.

In 1907, the appellee constructed a ditch across certain of her lands lying to the east and south of the lands shown in the plat, and extended said ditch on the half-section line westward to the center of Section 22. This portion of the ditch is shown on the plat as "Cresap Ditch." There is a roadway running north and south through the center of Sections 15 and 22, as shown on the plat. In 1901, one Horsley, who then owned a portion of the lands now belonging to the appellants, constructed small ditches, extending from the road last above referred to, in a westerly direction on the section line. These ditches were carried to within approximately 600 feet of the east bank of White Lake, but did not penetrate said bank. At the west end of the Horsley ditches there were constructed what are known in the record as "spur ditches," which extended in a south-westerly direction toward the southern extremity of White Lake, and served, at times of high water, to carry a portion of the overflow water from the lake into the Horsley ditches.

Some time shortly before the commencement of this action, the plaintiffs herein widened and deepened the Horsley ditches, and carried the same westward through the bank of White Lake. The dirt taken from the ditches, as so enlarged, was used in the construction of a private roadway, running east and west on the said section line. The western extension of this road is indicated on the plat as "new road." The road was graded across the lake at the place indicated on the plat. In the bed of the lake was placed a 30-inch galvanized iron pipe, and the grade was constructed over this. On the eastern side of the lake, the bank was cut through by appellants, and a galvanized iron pipe, 30 inches in diameter, was placed on each side of this grade, extending through the bank to the lake.

There is some conflict in the evidence in regard to exactly the depth at which these intake pipes are placed through the bank of the lake, but it is conceded by the appellants that the said pipes are at least 10 inches lower than any previous construction connecting with the water of the lake.

After the roadway had been constructed across the lake, and the Horsley ditches deepened and widened, and the intake pipes placed through the east bank of the lake, as described, the so-called "spur ditches," which had been the means previously provided for carrying the overflow water from the southern portion of the lake into the Horsley ditches, were filled by the appellants. The appellee sought, and by decree of the lower court obtained, an injunction permanently restraining the appellants from maintaining said intake pipes through the banks of White Lake, requiring that the same be closed, and decreeing that, if appellants were so advised, they might open the so-called "spur ditches" in connection with the Horsley ditches, and re-establish the same to the same depth as before they were filled. Appellants complain of the decree of the trial court, and insist that they have a right to construct and maintain the improvement as originally built by them, and to cut through the east bank of White Lake, and to place therein the intake pipes at the depth established by them. On the other hand, it is the contention of the appellee that the direct result of the improvement, as made by the appellants, will be to divert the waters of White Lake from their natural course, and to bring the same in great and unusual quantity to the so-called "Cresap ditch," owned by the appellee, and that this will, in a large measure, impair and destroy the efficiency of said ditch. It is appellee's contention—and there is evidence to sustain it—that the Cresap ditch was constructed solely for the purpose of carrying the surface water that naturally flowed across the appellee's land, and that to bring the water of White Lake, in the manner proposed by appellants, to the said ditch of appellee, will overtax said ditch and cause the water so brought to overflow appellee's land, and that great injury will result therefrom.

It must be conceded that our decisions, starting with *Livingston v. McDonald*, 21 Iowa 160, 173, on the general subject presented by this case, have not been altogether harmonious, and

that it is impossible to reconcile them. Our later decisions have been more liberal than the early pronouncements of this court, in permitting the owner of land to drain the same by surface or subterranean drainage, and to carry water upon a servient estate. *Tennigkeit v. Ferguson,* 192 Iowa 841, is of this character, and is wholly consistent with our holding in this case.

In *Lessenger v. City of Harlan,* 184 Iowa 172, we said:

"The owner of the upper estate may construct ditches and underground drains, to hasten the flow of surface water into and along the natural depressions or drainways on his own land, so long as he does not divert the water from its natural course. *Bickel v. Martin,* 115 Ill. App. 367; *Vannest v. Fleming,* 79 Iowa 638; *Dorr v. Simmerson,* 127 Iowa 551; *Hull v. Harker,* 130 Iowa 190; *Meixell v. Morgan,* 149 Pa. 415 (24 Atl. 216)."

In *Conklin v. City of Des Moines,* 184 Iowa 384, we also said:

"The law is well settled in this state that the dominant owner may, by discharging the same upon his own land into a natural watercourse, drain surface water upon the land of the servient owner, but cannot gather large quantities of water out of the ordinary and natural course of drainage, and discharge the same upon the servient estate, to its substantial damage, in largely increased quantities, or at a different place or in a different manner than it would usually and ordinarily have gone, in the natural course of drainage. *Kaufman v. Lenker,* 164 Iowa 689; *Obe v. Pattat,* 151 Iowa 723; *Martin v. Schwertley,* 155 Iowa 347; *Valentine v. Widman,* 156 Iowa 172; *Jontz v. Northup,* 157 Iowa 6; *Miller v. Hester,* 167 Iowa 180; *Pascal v. Hynes,* 170 Iowa 121; *Thomas v. City of Grinnell,* 171 Iowa 571; *Cowley v. Reynolds,* 178 Iowa 701; *Lamb v. Stone,* 178 Iowa 1268; *Pascal v. Donahue,* 170 Iowa 315; *Durst v. Puffett,* 181 Iowa 14; *Brightman v. Hetzel,* 183 Iowa 385; *Pester v. Smith,* 167 N. W. 580 (not officially reported)."

Appellants rely upon the provisions of Section 1989-a53 of the Code Supplement, 1913, which is as follows:

"Owners of land may drain the same in general course of natural drainage, by constructing open or covered drains, discharging the same into any natural watercourse, or into any natural depression, whereby the water will be carried into some

natural watercourse, and when such drainage is wholly upon the owner's land he shall not be liable in damages therefor to any person or persons or corporation.''

We have had frequent occasion, both before and since the enactment of this statute, to pass upon the question of the rights of the respective owners of dominant and servient estates, with regard to the bringing of both surface and subterranean waters. In *Jontz v. Northup*, 157 Iowa 6, we discussed the previous holdings at length, and took advanced ground as to the right of the owner of a dominant estate to gather surface waters into a ditch and discharge the same into a natural swale or depression, from which they might flow upon the servient estate. In said case, however, we said:

''We are not to be understood as holding that one may thus drain out large lakes or ponds upon his own land to the land of another; but that he may so drain sloughs or wet places we have already decided. Such drainage must be done in a proper manner, and so as not to substantially increase the flow.''

The cases are again reviewed and discussed in *Miller v. Hester*, 167 Iowa 180.

In *Valentine v. Widman*, 156 Iowa 172, we said:

''Even under the statute quoted [Section 1989-a53, supra], the defendant would have no right to gather up the water on his own land which did not theretofore have an outlet to the south, and discharge the same at a different place and in a different manner than it had gone before. *Everett v. Christopher*, 125 Iowa 668; *Holmes v. Calhoun County*, 97 Iowa 360; *Dorr v. Simmerson*, 127 Iowa 551; *Sheker v. Machovec*, 139 Iowa 1; *Wirds v. Vierkandt*, 131 Iowa 125; *Neuhring v. Schmidt*, 130 Iowa 401; *Hull v. Harker*, 130 Iowa 190; *Kopecky v. Benish*,' 138 Iowa 362.''.

We think the instant case comes clearly within the rules heretofore recognized and established by us. A careful reading of the evidence convinces us that the appellants, by the construction complained of, are doing far more than merely gathering the surface water that would naturally flow down a swale or natural depression into the appellee's ditch. Here is a lake covering approximately 80 acres, with well-defined shore line and banks. In times of high water, the excess water in the lake

overflows to the south and east, with no well-defined channel, but follows the general slope of the land in that direction; and undoubtedly a portion of the water finds its way into the appellee's ditch. The evidence satisfies us, however, that a very large portion of the water that overflows, under such circumstances, never finds its way into the appellee's ditch. The purpose of the improvement constructed by the appellants is not only to provide for the carrying off of the surplus water that would overflow from White Lake, but also to lower the body of water in White Lake at least to the extent of ten inches, and to carry said water through well-defined ditches, and discharge the same into the appellee's ditch at its upper end.

It is strenuously argued by appellants that this construction is, in fact, a benefit to the appellee, rather than an injury to her property. We cannot so regard it. The obvious purpose of the construction of the improvement by the appellants was to carry a very large volume of water that could not, in the course of nature, otherwise reach the appellee's ditch. It is not the case where the servient owner is required to take the water that would naturally come from a dominant estate, even though said water was collected in ditches or drains, but it is a plan to provide for the lowering of the water of a lake of 80 acres to the extent of at least 10 inches, and precipitating all of said water directly into the ditch constructed by the appellee upon her own land. Our most liberal interpretation of the rights of the owner of a dominant estate has not given countenance to the construction of improvements of this character with such results as would obviously follow under the facts in this case. The methods provided by our drainage laws for the establishment of drainage districts are readily available to the parties; but appellants cannot, by the construction undertaken in this case, bring upon appellee's land the waters from White Lake in such an unusual quantity and in such a direct manner as will be done by this improvement. The law governing this case has been established by our previous decisions.

We think the decree of the lower court was correct, both in its provisions enjoining the appellants from maintaining the intake pipes through the bank of the lake and requiring the restoration of the east bank of the lake to its normal condition,

and also in permitting the appellants, if so advised, to restore the so-called "spur" or curve ditches, as they had existed prior to the making of the improvement in question. We concur, not only in the findings of the trial court on the fact questions, but also in its conclusions as to the rights of the respective parties.

It therefore follows that said decree should be in all respects affirmed. It is so ordered.—*Affirmed.*

EVANS, C. J., ARTHUR and DE GRAFF, JJ., concur.

STEVENS, J., took no part in the decision of the case.