# IN THE COURT OF APPEALS OF IOWA

No. 18-0979
Filed July 24, 2019

**ROBERTA R. COUNTRYMAN, TRUSTEE OF THE RONALD W. WOODBURY GENERATION SKIPPING TRUST,**
    Plaintiff-Appellee,

**vs.**

**CHARLES B. LEX,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Webster County, William C. Ostlund, Judge.

Charles B. Lex appeals from a district court order requiring him to replace obstructed drainage tile located beneath his land preventing water from flowing off a neighboring property and under his property. **AFFIRMED.**

Andrew B. Howie and James R. Hinchliff of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, for appellant.

James L. Kramer of Johnson, Kramer, Mulholland, Cochrane & Cochrane, P.L.C., Fort Dodge, for appellee.

Heard by Vaitheswaran, P.J., and Tabor and Bower, JJ.

**VAITHESWARAN, Presiding Judge.**

This appeal arises from a dispute over obstructed drainage tile running beneath the ground from one landowner's farm field to a field of the neighboring landowner.

Plaintiff Roberta R. Countryman, trustee of the Ronald W. Woodbury Generation Skipping Trust, which owned one of the fields, sued Charles B. Lex, owner of the other field. Countryman alleged Lex "permitted trees . . . to grow over the private tile on [the trust's] land with the result that the roots of the trees . . . entered and obstructed the private tile, preventing it from carrying drainage waters from [the trust's] land to the county tile." Countryman sought injunctive relief and damages for crop losses and diminished land value. Following trial, the district court ordered Lex to "replace the obstructed tile with new, 12-inch plastic, corrugated, non-porous tile." The court also ordered damages for crop losses. Lex appealed.

Lex contends the district court should not have found an easement "on subsurface tiling from the trust property onto [his] property." In his view, Countryman failed to prove an easement by: (1) express grant or reservation, (2) prescription, (3) necessity, or (4) implication. Countryman counters that the trust had a statutory and common law "right to drain its land via subsurface drainage tile across Lex's land to the county's main drain." Countryman implies the right arises independently of the four types of easements enumerated by Lex. We agree with Countryman.

Iowa Code section 468.621 (2017) authorizes "[o]wners of land" to "drain the land in the general course of natural drainage by constructing or reconstructing

open or covered drains, discharging the drains in any natural watercourse or depression so the water will be carried into some other natural watercourse." The provision has survived in largely the same form for more than a century. *See, e.g.*, *Schlader v. Strever*, 138 N.W. 1105, 1107 (Iowa 1912) ("[P]rominence is to be given the recent statute, [Iowa] Code Supp. § 1989a53, which provides that owners of land may drain the same by the construction of open or covered drains discharging the same into any natural water course or into any natural depression whereby the water will be carried into some natural water course . . . ."); *Valentine v. Widman*, 135 N.W. 599, 600 (Iowa 1912) (quoting Iowa Code section 1989a53, which stated: "Owners of land may drain the same in the general course of natural drainage, by constructing open or covered drains, discharging the same into any natural water course, or into any natural depression, whereby the water will be carried into some natural water course . . . ."). As construed, the statute affords "[a]n upper landowner . . . the right to construct a drain in order to carry water from his land in its natural and usual course onto and over the land of another unless [the] quantity of water thrown upon the other's land is materially and unduly increased to his damage." *Cundiff v. Kopseiker*, 61 N.W.2d 443, 445 (Iowa 1953). The upper landowner or "dominant estate has the right to discharge water upon" the lower landowner or "servient estate whether such water is surface water or from a natural water course, either open or tiled." *Id.* at 446. In determining the dominant estate holder and the servient estate holder, the "general movement of flood waters is not determinative." *Downey v. Phelps*, 208 N.W. 499, 502 (Iowa 1926). Each is determined "largely by the elevations of the lands." *Id.*; *see also Moody v. Van Wechel*, 402 N.W.2d 752, 757 (Iowa 1987); Ctr. For Transp.

Research & Educ., Iowa State Univ., Iowa Drainage Law Manual 78 (2005), http://publications.iowa.gov/19966/1/IADOT_tr_497_Iowa_Drainage_Law_Manual_April_2005.pdf. These principles derive from the statute and opinions construing the statute as well as a common law easement for natural water courses. *See McKeon v. Brammer*, 29 N.W.2d 518, 527 (Iowa 1947) (discussing various types of common-law easements but stating, "In any event, [the predecessor to Iowa Code section 468.621] provides that owners of land 'may drain the same in the general course of natural drainage by constructing open or covered drains'" and "it seems that the rule under the statute now is that the upper proprietor may drain his land through natural watercourses in a way to increase the water that is to flow over the servient land, providing the increase is not too great or in such unnatural quantities 'as to be the cause of substantial injury'"); *Maben v. Olson*, 175 N.W. 512, 513 (Iowa 1919) ("[T]he right to drain into a natural water course is an easement appurtenant to the lands, and that all must take notice of the fact that the drainage may throw more water into that natural outlet.").

Applying the statute as construed, there is little dispute the trust property was at a higher elevation than Lex's property and the general course of natural drainage was from the southern portion of the trust property through the Lex property. A Webster County supervisor testified, "It was pretty obvious just standing at the road that there's a hill there." He noted the water "would have to go to the south" and, of necessity, cross Lex's property to the county drain. He stated there was "no way possible" the water could drain through an alternate drainage system to the north. One of the individuals who farmed the trust's land seconded this opinion. He testified the property was situated uphill from Lex's

farmland, and water could not drain to the north because "[t]he water won't run uphill." Even Lex agreed some of the trust's land was at a higher elevation than his. Although he noted a portion of both properties were "at approximately the same level," he did not seriously dispute the overall elevations.

Just as the land elevation was essentially undisputed, so too was the existence of a tile line beneath the properties. Countryman's husband testified the clay tile had "been there for a long time" and preexisted the trust. Another witness pegged construction of the line to at least the 1970s, based on the clay composition of the tiles. Although Lex was unaware of the line when he obtained his land twenty-two years before trial, he confirmed its existence with the county engineer and referred to part of the line as "my tile."

With those key facts established, the only remaining factual question was whether Lex obstructed the tile line to prevent the natural flow of water.

> The general principle of law is 'that the owner of the upper or dominant estate has a legal and natural easement in the lower or servient estate for the drainage of surface waters, that the natural flow or passage of the waters cannot be interrupted or prevented by the servient owner to the detriment or injury of the dominant proprietor . . . and that the owner of the dominant estate may cast an additional quantity of surface water upon the servient estate; if in so doing, he does not thereby do substantial damage to the servient estate.'

*Ditch v. Hess*, 212 N.W.2d 442, 448 (Iowa 1973) (citation omitted). Lex acknowledged his contract with the Conservation Reserve Program did not allow trees to grow on his property. He also confirmed the tile was "totally blocked by . . . tree roots . . . and soil." He stated he had not "removed all of the trees" or "all of the roots." The result of the obstruction was pooling of water on the trust's field and damage to crops.

On our de novo review, we conclude Lex obstructed the natural waterway to the detriment of the trust. *See Moody*, 402 N.W.2d at 757 ("The flow may not be diverted by obstructions erected or caused by either estate holder. . . . When fences, as they sometimes do, become filled with debris or soil, whether carried by water or directly built up by tillage of the soil, or when the obstruction results from growth of trees or brush, they should be cleared."); *McKeon*, 29 N.W.2d at 527 (concluding plaintiffs were entitled to have metal dam across a tile line removed); *Schlader*, 138 N.W. at 1107 ("[T]he drainage in question is along a natural waterway, and defendant cannot rightfully obstruct the flow and set the water back upon the land of the plaintiffs. The open ditch in which the tile was laid had existed from some more remote date, and afforded an outlet or means of escape for the drainage of both farms. Defendant has both filled this ditch and stopped the tile, thereby wholly preventing the flow from the dominant estate, except as the obstructed waters may arise and overspread the surface. There is no sound theory of law on which such action can be justified."); *Sobotka v. Salamah*, No. 11-1634, 2013 WL 104794, at *4 (Iowa Ct. App. Jan. 9, 2013) (finding obstruction of the flow of water). We affirm the district court's order for injunctive relief in the form of replacement of the tiles.

Anticipating a possible affirmance, Lex alternatively asks this court to "amend the district court's ruling to order [Countryman] to be required to maintain said tiling, bear any future costs related thereto, including, but not limited to: maintenance, repair, assessment, taxation, or any other monetary consequence related thereto, pursuant to Iowa Code chapter 468." The trust responds the issue

"is not properly before this court nor is it ripe for decision." We agree the issue was not raised or decided and resolution of the issue is premature.

**AFFIRMED.**