C. C. KAUFMAN, Appellee, v. J. W. LENKER ET AL., Appellants.

Drainage: RIGHTS OF LANDOWNER. While a landowner may drain into
a natural water course or depression on his own land which will
carry the surface water into a natural watercourse without liability
for damages to others, he is not authorized to divert water in ponds
on his own land away from its natural course, by cutting channels
through a natural barrier and discharging it upon or close to the
lower lands of an adjacent owner. Nor can he discharge surface
water upon the land of another at a place different from its natural
flow, or in materially increased quantities.

*Appeal from Cedar District Court.*—HON. F. O. ELLISON,
Judge.

TUESDAY, APRIL 14, 1914.

ACTION in equity to enjoin the defendants from casting
surface water upon plaintiff's land. The defendants pleaded
that they had the right to do so, under the law, and, under
the issues joined, the case was tried to the court, resulting
in a decree for plaintiff, and defendants appeal.—*Affirmed.*

*Chas. W. Kepler & Son,* for appellants.

*Chas. B. Kaufmann* and *John T. Moffit,* for appellee.

DEEMER, J.—This is a controversy between the proprie-
tors of adjoining tracts of land regarding the right of the
defendants to drain certain ponds upon their own land
through an eight-inch tile onto and upon the lands of the
plaintiff.

The defendants' lands lie north of and abut upon the
lands owned by the plaintiff, and the general course of drain-

age is toward the south and southeast; the land of plaintiff being slightly lower than that belonging to the defendants. On defendants'. north forty acres there are two ponds, one with an area of two and three-tenths acres, to what is called the overflow line or depression No. 1, and the other, known as depression No. 2, consists of one and four-tenths acres of land to the overflow line. The overflow from this last depression is into No. 1. The amount of ground draining into these two depressions is something like twenty-six acres. There is a natural rim around these ponds, as already indicated, and south and southeast from pond or depression No. 1 there is a natural barrier or ridge, and, while the testimony is in some conflict, it seems that the surface water never overflowed this ridge.

In the year 1892 the defendants laid a five-inch tile from these ponds south and southwest through a part of plaintiff's land, and westward through the lands of one Bolly to what was known as Otter creek. This tile was laid as nearly as could be along the natural course of drainage. It did not, however, drain all the water from the ponds, and in the year 1907 defendants laid another large eight-inch tile from pond No. 1, southeasterly through their own land, to within three feet of the line fence between their own and plaintiff's land. The inlet was laid in the bottom of the pond, and it ran through the natural barrier before indicated, and at its outlet was two feet one inch below the surface of the ground.

At the outlet of the tile, the defendants, to protect their own land from erosion and the water as it boiled up, constructed a cement abutment level with the top of the ground, which has wings ten feet long extending either way, and it is about two and one-half feet from the top of the cement abutment to the bottom of the tile. As before stated, the eight-inch tile passes through a ridge or natural barrier of at least two and one-half feet, and, although the tile extends 1,165 feet, the fall is only three-tenths of a foot per one hundred feet. As a result of the eight-inch tile being laid,

large bodies of water have been cast on the plaintiff's land after freshets and heavy showers, which never before reached said land; and at a point where water did not flow even after freshets. The eight-inch tile not only cast water in an unduly increased amount and in an unnatural manner, but also where there was no natural water course.

The eight-inch tile has caused a ditch to be cut on the plaintiff's land. At the outlet the width of the ditch is five feet; ten feet down the ditch is seven and one-half inches deep, and from edge to edge is about sixteen feet; and five hundred feet down the ditch disappears and the water spreads over a vast area of the plaintiff's land, and the ground is only four and one-half inches lower than at the outlet. The surveyor testified: "Yes, sir; I intend to convey to the court the idea that this eight-inch tile is what caused the washing of the ditch."

Before the eight-inch tile was laid, there was no ditch or water course at the outlet of the eight-inch tile. At the present time there are no other ditches on the plaintiff's west twenty, because the land is practically level. The water was cast in an unnatural manner and in an unduly increased amount by the defendants upon the plaintiff's premises, to the material injury of the plaintiff estimated at from $30 to $40 per acre in the value of the land. There was no ditch or water course over plaintiff's land until the eight-inch tile was put in, and it was cultivated all the time before defendants turned the water thereon.

The main feature in the case is that, before the eight-inch tile was put in, no water from either pond ever passed over or upon plaintiff's land, and, in order to make it flow in that direction, defendants were compelled to cut a ditch something like forty inches deep, to get the water across a barrier which nature had erected to cause it to flow upon the lands of the plaintiff. That this has greatly damaged him the evidence tends strongly to show. Defendants, however, contend that they had the right to carry the water in this

direction, and through the tile, in virtue of section 1989-a53 of the Code Supplement, reading as follows: "Owners of land may drain the same in the general course of natural drainage, by constructing open or covered drains, discharging the same into any natural water course, or into any natural depression, whereby the water will be carried into some natural water course, and when such drainage is wholly upon the owner's land he shall not be liable in damages therefor to any person or persons or corporation." The difficulty with this contention is that it is not applicable to the facts. The tile did not follow the natural course of drainage, but cut through a barrier and carried the water where it did not theretofore go. Moreover, it was not discharged into any water course or natural depression.

Whilst we have been very liberal in the application of the rules with reference to the disposition of surface water, we have never held that one may collect and discharge it at a place other than nature intended it to go, and have at all times adhered to the rule that one must so use his own as not to unnecessarily injure and damage another. So long as he follows the natural course of drainage, and discharges the water into a natural depression or water course, from which it will be carried into some natural water course, he will be protected, if the drainage is wholly on his own land. But he cannot divert water from its natural flow or from the course nature intended, cut through natural barriers, and discharge the water upon or close to his neighbor's land.

In *Sheker v. Machovec,* 139 Iowa, 1, we said: "Where, by means of tile drains, the owner of the higher land discharges upon the lower land water from an area which would otherwise not have been drained across the lower land, or at a point where the water from the higher land would not naturally have been discharged upon the lower land to the material injury of the latter, then, according to the uniform current of authorities in this state, beginning with the leading case of *Livingston v. McDonald,* 21 Iowa, 160, reaffirmed in

*Vannest v. Fleming,* 79 Iowa, 638, and many subsequent cases, the owner of the higher land is liable in damages.'' See, also, to the same point: *Baker v. Akron,* 145 Iowa, 485; *Valentine v. Widman,* 156 Iowa, 172; *Martin v. Schwertley,* 155 Iowa, 347; *Matteson v. Tucker,* 131 Iowa, 511; *Parizek v. Hinek,* 144 Iowa, 563; *Hull v. Harker,* 130 Iowa, 190.

None of the cases cited and relied upon by appellants run counter to these rules.

The decree seems to be correct, and it is—*Affirmed.*

LADD, C. J., and GAYNOR and WITHROW, JJ., concur.