In re SIMMONS et al., Board of Water Supply.

(Supreme Court, Appellate Division, Second Department. January 22, 1915.)

EMINENT DOMAIN (§ 227*)—CONDEMNATION—COMMISSIONERS OF APPRAISAL—POWERS OF.

　　Laws 1905, c. 724, having provided for the appointment of the board of water supply of the city of New York, provides in section 7 for the appointment of commissioners of appraisal. Section 9 provides that at least one of them shall reside in the county of New York and at least one shall reside in the county or one of the counties in which the real estate shall be situated, and that as commissioners of appraisal they shall determine the compensation to be paid persons interested in the real es-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tate taken or affected by the creation of reservoirs, etc. *Held* that, while the act did not specifically require the third commissioner to be either a resident of the county of New York or of the county wherein the land was situated, yet, in view of the usual requirements of commissioners of appraisal in eminent domain proceedings, a commissioner who removed from the county in which the land was being taken and acquired a residence in a foreign state is no longer eligible.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 581; Dec. Dig. § 227.*]

Appeal from Special Term, Westchester County.

In the matter of the application and petition of J. Edward Simmons and others, constituting the Board of Water Supply of the City of New York to acquire real estate, etc. From an order denying the petitioners' motion that George N. Rigby be removed as one of the Commissioners of Appraisal, the petitioners appeal. Order reversed.

Argued before JENKS, P. J., and THOMAS, STAPLETON, RICH, and PUTNAM, JJ.

H. T. Dykman, of White Plains (Charles Wesley, on the brief), for appellant.

Tompkins McIlvaine, of New York City (Albert Southard Wright, of New York City, on the brief), for respondents Executors of Huntington.

Chase Mellen, of New York City, for Rigby.

PUTNAM, J. Laws of 1905, c. 724, being the act providing for the commission or board of water supply of the city of New York, directed (section 1) that the mayor "shall appoint three persons who shall be commissioners for the purposes hereinafter specified. The persons so to be appointed shall be public officers and shall constitute a board or commission to be called the board of water supply of the city of New York." Section 7 provides for application to the Special Term for the appointment of commissioners of appraisal.

Upon proof of proper publication the court is by section 9 to make an order for the appointment of three disinterested and competent freeholders, "at least one of whom shall reside in the county of New York and at least one of whom shall reside in the county or one of the counties in which the said real estate shall be situated, as commissioners of appraisal to ascertain and appraise the compensation to be made to the owners and all persons interested in the real estate laid down on said maps as proposed to be taken or affected for the purposes indicated in this act."

Section 12 regulates the filling of vacancies by death or resignation, by an appointment at Special Term, upon 10 days' notice by advertisement, of one or more commissioners to fill the vacancies so caused.

The board caused maps to be filed and other introductory steps for taking the Hill View Reservoir or Aqueduct, including parcels Nos. 1 and 3 in the county of Westchester. Whereupon, on May 4, 1907, the Special Term at Westchester county appointed Mr. Martin of New York county, with Mr. Apgar and Mr. Rigney, both of Westchester county, as commissioners. These commissioners of appraisal duly or-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ganized and made many official reports. When appointed, Mr. Rigby (a member of the bar) was a competent and disinterested freeholder of Westchester county, where he also resided. He continued to be such resident until, in May, 1913, he became, and has since been, a resident and voter at Ormond, Fla. He, however, is still a freeholder in Westchester county. This appeal by the petitioners raises the question: Did Mr. Rigby's change of residence disqualify him from thereafter acting as a commissioner of appraisal?

A special delegated authority to take away a man's property and estate against his will must be strictly pursued (Rex v. Croke, Cowper, 30), not only in following the steps as laid down in the special act, but in compliance with the general principles of such proceedings as to the essential rights of the defending landowner (Matter of City of Rochester, 208 N. Y. 188, 101 N. E. 875, 47 L. R. A. [N. S.] 151). Commissioners to take and value lands by the power of eminent domain are ordinarily to hear evidence, but may also be guided by their own view of the lands and their surroundings. 15 Cyc. 889. And in certain instances a determination so made without hearing witnesses will not be disturbed. In re Newland Ave., 60 Hun, 581, 15 N. Y. Supp. 63.[1]

A condemnation based entirely or in part upon a view of the premises, in which the commissioners' personal knowledge counts for so much, necessarily requires that they be familiar with the property and its surroundings. Like the functions of jurors in the Norman period, who could act per proprium visum et auditum, without testimony of witnesses, the requisite local knowledge for such duties necessitated the further rule that such persons must come from the neighborhood. Thayer, Trial by Jury, in Prel. Treat. on Evid. p. 91. Such a jury was "a body of neighbors" summoned by some public officer to give upon oath a true answer to some question. 1 Pollock & Maitland's Hist. of Eng. Law, p. 138.

In the colonial times, the freeholders to value lands taken for highways had to be called from the neighborhood.

The act "for the better clearing & further laying publick high roads in the county of Ulster," passed December 17, 1743 (chapter 753, Colonial Laws), directs that the appraisal "shall be determined and the true value set & appraised by two justices of the peace, and by the oaths of twelve of the principal freeholders of the neighborhood not having any interest." 3 Col. Laws, p. 328. Also, an act for the "better laying out regulating, clearing and keeping in repair the public roads and highways in the counties of Albany and Tryon," passed March 24, 1772, the valuations were to be "by the oath of twelve of the principal freeholders of the neighborhood" about which such dispute may arise. 5 Col. Laws of N. Y. p. 369.

In the general provisions for taking lands for highways, the Revised Statutes directed the final reassessment by six jurors drawn from any other town of the county. 1 R. S. c. 16, §§ 65, 66. But later this area, from which such jurors assessors could be drawn, was restricted to the town adjoining that in which the damages should be assess-

---

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 60 Hun, 581.

ed. The persons were to be drawn by the town clerk of the adjoining town, and then summoned before a justice of the peace in the town in which the damages are to be assessed; the first six, free from legal exception, were to be the appraisers. Laws of 1847, c. 455, §§ 3, 4, 6.

Special railroad charters with right to take land early provided for commissioners of appraisal to be appointed by the chancellor or the vice chancellor. They were to be freeholders and residents of the county. See Laws of 1832, c. 233, § 9. When they were to be drawn from the grand jurors, by a vice chancellor, it was provided that in case of a vacancy "by death, removal out of the county, or any permanent disability, such vacancy may be supplied on the petition of the said corporation, by the vice chancellor, who shall have authority to designate a competent and disinterested freeholder of the county to act as appraiser." Laws 1845, c. 350, § 20, Act for the construction of a railroad from Seneca Lake to the New York & Erie Railroad in the county of Chemung.

If we refer to the provisions for the water supply of the city of New York, like stress will be found to be laid upon residence. In the act to facilitate what was subsequently the reservoir at Bryant Park (Laws of 1853, c. 501, § 4), the appraisers to be appointed were to be "three competent and disinterested persons, residents of the city and county of New York."

Regarding watershed lands, and those to be taken for the aqueduct, the commissioners were to reside in the county, or some adjoining county where the property to be appraised is situated. Laws of 1877, c. 445, § 5. Later it was "one of whom shall reside in the county of New York, and the other two of whom shall reside in the county or counties in which the said real estate shall be situated." Laws of 1883, c. 490, § 8. Then the two not from New York county "shall each reside in one of the counties in which the said real estate shall be situate, or in an adjoining county." Laws of 1893, c. 189, § 9. Under this provision, land might be taken on an appraisal by persons all residing outside the county of its situs. This was remedied in the city charter, which, as to the two outside of New York county, provided that one shall reside in the county in which said real estate acquired or affected is situated, and one of whom shall reside in such county, or in an adjoining county. Laws of 1901, c. 466, § 492. Finally, the Condemnation Law has defined the general field from which such commissioners may be appointed. Except in the first and second districts, they must be "residents of the judicial district embracing the county where the real property, or some part of it, is situated, or of some county adjoining such judicial district." In the first and second districts, the commissioners must reside in the county of the situs. A significant clause, however, allows the parties to waive the provisions of this section as to residence of the commissioners, in which case they may be residents of any county in the state. Code Civ. Proc. § 3369. Even by consent, therefore, commissioners residing without the state are unauthorized.

The element of neighboring residence to the land has thus been made indispensable. Although the present Water Supply Law is

not definite as to the third commissioner, the court is still to look at these essentials of a fair appraisal. Such local residence, sharing in the knowledge of the community among whom the appraiser is himself to be held responsible, has been found necessary for a right discharge of these duties. An absentee freeholder is not so qualified. Although this statute did not clearly state the requisite residence of one of the three commissioners, the Special Term, acting in keeping with the continuity of precedent, could not, in the first instance, have lawfully appointed as commissioner a nonresident, whose domicile and allegiance were in Florida, even if he owned a freehold in the county of the situs. In some degree such a nonresident would be beyond the power and jurisdiction of the appointing court. And if such a nonresident could not be appointed, the removal and taking up a residence in Florida amounted to a giving up of the appointment and, from the date of such removal, vacated the office. To hold otherwise would leave the qualifications of this commission too insecure to form a competent body to take away a man's land against his will, even if at present we hear no objection from the defending landowners. While the fairness, competency, and general fitness of this commissioner are conceded, we deem this qualification of residence to be jurisdictional.

The order must therefore be reversed, but without costs; and an order directed to be entered declaring the place and appointment of Mr. George N. Rigby vacated, and that the remaining commissioners take steps, under section 12 of the Water Supply Act, for the appointment by the Special Term of a commissioner to fill the vacancy so occasioned. All concur.