Emma Beers et al., Appellees, v. Incorporated Town of Gilmore City, Appellant.

EMINENT DOMAIN: Condemnation—Impartial Jurors. A statute
1   which provides that a jury in eminent domain proceedings in favor
of a city shall be selected from freeholders of the city is not unconstitutional.

EMINENT DOMAIN: Compensation—Discharge of Sewerage on
2   Private Property. A city may not discharge the contents of its
sanitary sewer upon private lands without condemning a right of
way therefor, even though such discharge is in a substantially sanitary condition.

WATERS AND WATERCOURSES: Unnatural Drainage. Principle re-
3   affirmed that one may not gather water in large quantities and
discharge the same upon private property in a manner substantially
different from the way nature would cast it.

*Appeal from Pocahontas District Court.*—D. F. Coyle, Judge.

January 8, 1924.

Action in equity, to enjoin the construction of a disposal plant and the discharge of the effluence therefrom upon the lands of plaintiffs. Decree as prayed. Defendant appeals.— *Affirmed in part; reversed in part.*

*Burnstedt & Hemingway,* for appellant.

*Kelleher & Mitchell* and *T. F. Lynch,* for appellees.

Stevens, J.—I. Appellees are the owners of 160 acres of land, lying south of a public highway known as a primary road, extending west from the town of Gilmore City. Three of the

40's abut upon the highway. The remaining 40 is immediately south of the west 40. The east 40 is owned jointly by plaintiffs; the remaining 40's are owned separately by the appellee Emma Beers.

The town council of Gilmore City, on October 5, 1920, passed a resolution of necessity, providing for the condemnation of a site upon appellees' east 40, for a disposal plant. A sheriff's jury, composed exclusively of citizens and freeholders of the town of Gilmore City, were appointed, and assessed damages for a site for such disposal plant, which consisted of a tract about 300 feet west of the east line of appellees' farm, and north of the highway, about 250 feet square. A disposal plant was constructed during the pendency of this litigation, the effluence therefrom being carried through a tile laid in the public highway to a point immediately opposite a ditch or drain across appellees' land, into which it flows from the highway, and through which it is carried off to the southwest in the direction of Lizard Creek, into which the ditch empties. The damages awarded by the sheriff's jury were paid into court, as provided by law, pending the disposition of an appeal by the owners of the land to the district court. Nothing was done by appellant to condemn a right of way across appellees' land for an outlet, and no damages were awarded by the sheriff's jury on account thereof.

It is conceded that the surface drainage of Gilmore City is in three directions, about one third of the watershed being drained across, or in the direction of, appellees' land. The sewer system is so located and constructed that all of the water and organic matter discharged into it is carried to the disposal plant, from which, as stated, the effluence is taken through a 12-inch tile down the highway to the ditch across appellees' land. This tile was placed in the highway under an arrangement with the board of supervisors.

The court below held that the proceedings to condemn the site for a disposal plant were invalid, for the reason that the jury were all taxpayers of Gilmore City, and directly or indirectly interested in the improvement, and that Section 884 of the Code, if given effect according to its express terms, is unconstitutional; that

1. EMINENT DO-
MAIN: condemna-
tion: impartial
jurors.

appellant has no right to collect water in its sewerage system and discharge it upon appellees' premises without compensation; and that, by doing so, it has created a nuisance in the immediate vicinity of and upon the lands of appellees. A permanent injunction was granted, restraining appellant from maintaining a disposal plant upon, or discharging the effluence therefrom across, appellees' premises. Code Section 884 is as follows:

"Proceedings for condemnation of land as contemplated in this title shall be in accordance with the provisions relating to taking private property for works of internal improvement, except that the jurors shall have the additional qualification of being freeholders of the city or town."

We shall first dispose of the contention of appellees that the condemnation proceedings were void for the reason that the damages were not awarded by an impartial jury, and that Section 884 of the Code, if construed according to its express terms, is unconstitutional. Counsel upon both sides cite decisions of this and other courts to sustain their respective contentions. It seems to us that the authorities cited are in no sense in conflict. The circumstances in one case may disclose that a tribunal constituted to hear and determine issues affecting property rights is so directly, or even indirectly, interested as to be disqualified; while, under other circumstances, the disqualification does not exist. It is elementary that a judge shall not sit in his own case. The following authorities cited by appellees are largely of this character. *Stahl v. Board of Supervisors,* 187 Iowa 1342; *Peirce v. City of Bangor,* 105 Me. 413 (74 Atl. 1039); *Chesapeake & O. Canal Co. v. Binney,* 5 Fed. Cas. 2645; *Rock Island & Alton R. Co. v. Lynch,* 23 Ill. 645; *Peninsular R. Co. v. Howard,* 20 Mich. 18; *Strang v. Beloit & M. R. Co.,* 16 Wis. 666; *Johnson v. City of Waterloo,* 140 Iowa 670; *Cason v. City of Ottumwa,* 102 Iowa 99. As opposed to these authorities, appellant relies upon the following: *Phillips v. Watson,* 63 Iowa 28; *LaPlant v. City of Marshalltown,* 134 Iowa 261; *City of Bridgeport v. Giddings,* 43 Conn. 304; *State v. Wright,* 54 N. J. L. 130 (23 Atl. 116); *McKusick v. City of Stillwater,* 44 Minn. 372 (46 N. W. 769); *City of Minneapolis v. Wilkin,* 30 Minn. 140 (14

N. W. 581); *Loucheim v. Hemsley,* 59 N. J. L. 149 (35 Atl. 795);
*In re Simmons,* 166 App. Div. 752 (151 N. Y. Supp. 537).

The effect of the holding of the above cases is that a statute
which requires that a jury in condemnation proceedings in favor
of a city or town shall be selected from freeholders of said city
or town, is not unconstitutional.  The theory is that their in-
terest in the subject-matter is too remote to disqualify them from
serving as jurors in such proceedings.  We held, in *LaPlant v.
City of Marshalltown,* supra, that a judge of the district court
was not disqualified from trying a case in which the city in
which he resided was a party, merely because he was a free-
holder and taxpayer therein.  The disqualification exists only
when the tribunal is interested in the subject-matter before it
in such a way and to such an extent as that the same is likely
to influence his judgment and deprive the property owner of an
award by an impartial jury.  With the wisdom of the statute we
have nothing to do.  No authority is cited, nor have we been
able to find any, holding a statute similar to Section 884 uncon-
stitutional.  The statute is mandatory in form, and, unless it
contravenes some provision of the Constitution, state or Federal,
it must be given effect.  We are satisfied that it is not in con-
flict with the fundamental law; and, as the jury selected by
the sheriff in this proceeding possessed the qualifications fixed
by the statute, it was not illegal, nor are the condemnation pro-
ceedings invalidated because of the possible remote interest of
the jurors.

II.   The sewer system of Gilmore City was designed as an
exclusive sanitary sewer, and the only water or matter carried
therein is that which is discharged from toilets, sinks, bath tubs,
etc., except as water enters it by percolating
through the ground.  All of this fluid and ma-
terial enters the disposal plant, where the or-
ganic matter undergoes a process of decomposi-
tion and bacterial action not chemical.  After leaving the dis-
posal plant, the fluid, with its contents, passes through what is
known as a trickling filter, and thence into the tile through which
it is carried and discharged into the highway at the point indi-
cated.  Without setting out the evidence in detail, it is suffi-
cient to say that the theory is that disease germs existing in the

2. Eminent do-
main: compen-
sation: discharge
of sewerage on
private prop-
erty.

effluence are destroyed by bacterial action, and that it passes out of the tile into the outlet in the highway in a substantially sanitary condition.

It is conceded that not all of the organic matter is eliminated at the disposal plant, and that a quantity is always passing out, and that, about twice a year, a large quantity thereof, which is not particularly harmful, is carried off through the tile. The chief witnesses for appellees testified that the effluence is more sanitary and carries less disease germs than does the surface water flowing from ordinary barnyards, and that the danger to cattle of intestinal disease from drinking water into which it is carried is less than it is from drinking water into which water from barnyards is carried at times of rainfall.

The evidence as to the extent to which odors arise from the disposal plant or are to be found at the outlet of the tile in the highway is in conflict. There is substantial agreement that the odor escaping from the plant itself is very slight. Some of the witnesses testified that the water, where it flows out of the tile, gives off an odor; while other witnesses testified that they were unable to detect any odor therein. The witnesses agree that the water at this point is substantially clear. The ditch across appellees' land is continued about 3 or 3½ miles, and empties into Lizard Creek. The fall across the section is only about six inches. The ditch follows a depression, and the evidence shows that large quantities of surface water from the higher land on either side, and perhaps to the north, gather in the low land, and are carried off by the ditch. The ditch is known as a Capstan ditch, and has slight embankments on each side. As originally dug, it was about three feet deep and six feet in width. It has filled up to some extent, and is perhaps, at the present time, estimating from the top of the bank, a foot or a foot and a half in depth. The ditch has been in existence for several years, and its capacity appears to be sufficient to carry off the surface waters accumulating in the lowlands in a day or two after a heavy rainfall. At the time of the trial, about 18,000 gallons of water were consumed by the town every 24 hours. This quantity will be considerably increased, as the use of the sewer by the citizens of Gilmore City becomes more general. It is the contention of appellees that the collection of the water in the

tile so as to discharge it in the highway at the point in question, with the resultant overflow thereof onto their premises, amounts to a taking of private property for public use without compensation. That private property cannot be so appropriated is too well established to require the citation of authority, but see *United States v. Grizzard,* 219 U. S. 180; *Hopkins v. Clemson Agric. College,* 221 U. S. 636 (55 L. Ed. 890).

It is also contended by appellees that the discharge from the sewer is polluted, and that, because of this fact and the discharge thereof into the ditch upon their land, a nuisance is

3. WATERS AND WATERCOURSES: unnatural drainage.

created. The law is well settled in this state that one may not gather surface or other waters in large quantities and discharge the same upon private property so as to cause damage thereto at a different place or in a different manner than the same would usually and ordinarily have gone, in the regular course of drainage. *Schofield v. Cooper,* 126 Iowa 334; *Sheker v. Machovec,* 139 Iowa 1; *Kaufman v. Lenker,* 164 Iowa 689; *Conklin v. City of Des Moines,* 184 Iowa 384, and cases cited.

It is claimed by appellees that the effluence from the disposal plant will freeze in cold weather, causing the ditch to become filled and the water to overflow the surrounding lowlands and to cover the same with ice. The extent to which appellees' lands will be subjected to overflow or damages is material at this time only as the evidence relating thereto bears upon the question as to the relief to which appellees are entitled. The question at this point is whether the injunction granted by the court below, restraining appellant from discharging the effluence from the sewer upon appellees' land, should be sustained, or whether they should be remitted to their remedy at law for damages. As to whether the effluence is so polluted or of such a character as to create a nuisance independent of the flowage thereof upon appellees' land, we do not determine. This question we leave to be considered by the jury in the condemnation proceedings, if any are hereafter instituted, to condemn a right of way across appellees' land. The act of appellant in collecting the water in its sewer and discharging the same at a point in the highway from which it would necessarily pass upon the lands of appellees, is an invasion of their rights which a court of equity has juris-

diction to restrain.. Appellees should not be compelled to find redress in a multiplicity of actions for damages.   The law to this effect is well settled in this state, and need not be further discussed.   *Holmes v. Calhoun County,* 97 Iowa 360; *Watt v. Robbins,* 160 Iowa 587; *Falcon v. Boyer,* 157 Iowa 745; *Cresap v. Livingston,* 193 Iowa 488.

In so far, therefore, as the decree below enjoined appellant from discharging the contents of its sewer upon the lands of appellees, it is affirmed.   In all other respects, it is reversed.—*Affirmed in part; reversed in part.*

PRESTON, DE GRAFF, and VERMILION, JJ., concur.