In the Matter of GEORGE J. GILLESPIE et al., Constituting the Board of Water Supply of the City of New York, to Acquire Real Estate in the Counties of Ulster, Sullivan and Delaware, Petitioners.

(CONSOLIDATED DELAWARE COMMISSION REPORT.)

Supreme Court, Special Term, Ulster County, December 29, 1942.

*William C. Chanler, Corporation Counsel (John E. Egan, Richard H. Burke* and *Vincent G. Connelly* of counsel), for petitioners.

*William G. Birmingham* for William H. Lawrence et al., claimants.

*Charles W. Walton* for Charles E. Freer, claimant.

*Gardner LeRoy* for Benjamin Bertholf et al., claimants.

*Deckelman & Schadt* for Sam Hook et .al , claimants.

BERGAN, J. This proceeding is a consolidation of eight former proceedings for the appraisal of land taken by the City of New York in condemnation. It involves the taking of land in Ulster and Sullivan Counties on claims that were not disposed of in the former proceedings.

The Commissioners appointed by the Special Term reside in New York, Albany and Ulster Counties respectively. They have reported. Objection to the report is made by the claimants who are owners of the Sullivan properties. The objections are laid upon the grounds that the Commission was not properly constituted as to the Sullivan owners; that it was without jurisdiction; and, upon constitutional and statutory grounds, its report is void. These questions, conformably with the understanding of the parties on the argument, will be disposed of

separately before any of the report is considered on the merits.

The statute (Administrative Code of the City of New York, § K41-9.0; L. 1937, ch. 929) provides that the court shall appoint as commissioners three disinterested and competent freeholders, at least one of whom shall reside in the city of New York and " at least one of whom shall reside in the county or one of the counties in which such real estate shall be situated." It is argued by the objecting claimants that the use of the words " or one of the counties " in the statute has application only where an integrated parcel of a claimant lies in more than one county, and that it has no application to a proceeding which may include groups of parcels located severally in more than one county.

So narrow a construction may not be given to the language. That the statute contemplates the taking and appraisal of real estate severally located in separate counties is apparent from the statutory context, and the appraisal of real estate located within several counties by a single commission is likewise within the statutory contemplation. The " final map," which may, of course, be the basis of a single proceeding, must be filed in the county clerk's office " of each county in which any of the land affected thereby is situated." (§ K41-3.0, subd. c.) The maps further provided by section K41-6.0 must be filed by the Corporation Counsel " in the office of the clerk of each county in which any real estate laid out on such map shall be located." The " lands or some part thereof shown on such maps " become the basis of the application to appoint commissioners of appraisal. (§ K41-7.0.) All the lands, in several counties, could be appraised in one proceeding within the frame of such a statute.

With this language leading in sequence to section K41-9.0 the use of the words " county or  *  *  *  counties " in which " such real estate shall be situated " can have no other meaning than to apply equally to parcels severally in more than one county as shown by the maps, as well as to parcels which may, perchance, lie in more than one county. If this is a valid construction of the statutory words, the statute itself gives the rest of the answer, for at least one commissioner shall be appointed from " the county or one of the counties," which was done in this case. Therefore the order of appointment was entered in conformity with the statute. See discussion in *Matter of Board of Water Supply of City of New York* (157 Misc. 842, 843).

It is argued, further, that this portion of the statute is invalid, since the Constitution [N. Y. Const., art. I, § 7, subd. (b)] vests the power of appointment of commissioners in the court and

the legislative prescription of residence of commissioners was a gratuitous and improper intrusion into a judicial power resting directly on a constitutional grant. The logic of the argument applies equally to the requirement that one of the commissioners be a resident of the county where the real estate is located. If the premise of the argument be agreed to, the Legislature could give no direction in respect of qualifications of commissioners not found in the Constitution, and the court could act with entire freedom within the constitutional language in its appointments. It may well be that the words " as shall be prescribed by law " appearing at the end of the constitutional subdivision were not designed to qualify the appointment of commissioners, but were designed only to authorize a legislative choice among the three methods of fixing compensation.

Still, it is within the legislative power to prescribe the qualifications of commissioners, as it would be to prescribe the qualifications of jurors or official referees who would make appraisals under the alternative methods provided by the Constitution. Moreover it has long been the practice of the Legislature, in one way or another, to prescribe qualifications of commissioners to be appended to the constitutional language. All the Constitution says is that there shall be three and they shall be appointed by the court. Almost every statute providing for appraisal by commissioners adds some further qualification. The Condemnation Law is a good example. Section 13 provides that the commissioners shall be disinterested; that they shall be competent freeholders; that they shall be residents of the judicial district or a county adjoining the judicial district; and in certain judicial districts that they shall not have certain official connections with judges. It is reasonably accurate to say that all appraisals in condemnation made in this State by commissioners are made in pursuance of legislative direction as to qualifications superimposed on those provided by the Constitution, and I think this is a proper exercise of the legislative power.

In *Matter of City of Rochester* (184 App. Div. 369) it was held, among other things, that the constitutional power of the court to appoint commissioners was plenary and could not be circumscribed by a legislative requirement that at least one commissioner should be a resident and freeholder of the city of Rochester. Upon the ground stated in the opinion of DE ANGELIS, J., in this case there was decided concurrently *Matter of City of Rochester* v. *Holden* (184 App. Div. 925) which was considered by the Court of Appeals at 224 New York 386. The order of the

Appellate Division was affirmed, but the affirmance turned upon grounds other than this one.

The Court of Appeals did not find that the statutory provision intruded upon plenary judicial power. It discussed the merits of the argument that a legislative " suggestion " in providing for residence qualification that one commissioner be expected to guard the interests of the condemning party without a like suggestion for the protection of the property owners might not afford equal protection of the laws. (Pp. 393, 394.) It expressly declined to hold that the statute did deprive the property owners of equal protection under the laws. (P. 394.) It held that the statutory scheme was not commendable and, in view of other parts of the statute, upon which the case was decided, that it was not negligible. The appellate treatment of the sweeping condemnation of any legislative prescription of the plenary constitutional power of the court to appoint commissioners contained in *Matter of City of Rochester* (*supra,* 184 App. Div. 369) makes it clear that this part of that decision is no longer to be followed. The facts in *Matter of Simmons* (166 App. Div. 752) have no analogy here.

Finally, it is argued that if the statute be construed as requiring the appointment of one commissioner resident in New York City, requiring the appointment of one commissioner resident in only one of two or more counties in which the land is situated, and permitting the appointment of the third commissioner resident elsewhere, and if, as here, that procedure is followed in the order of appointment, the property owners in the county in which there is no resident commissioner are deprived of equal protection of the laws of the State.

The answer to this contention is to be found in the opinion of the Court of Appeals in *Matter of City of Rochester* v. *Holden* (*supra*). There the court, dealing with a statute the plain and manifest purpose of which was to require residence of at least one commissioner in the condemning city and to make no requirement at all for residence in the neighborhood of the condemned property, and which in other provisions operated to give one-sided advantage to the city, declined to hold that the property owners were deprived of equal protection of the laws, although a minority of the court was of that opinion. The court condemned the scheme of the statute but, with the question squarely presented, did not invalidate it upon this ground.

The Administrative Code is certainly not open to the broad objection to the Rochester Charter there considered. Under the Code provisions, where the property is located within one

county, a resident of that county, as well as of the condemning city, must be appointed. Where the property is in more than one county, a resident of the general locality of the property, i. e., of one of the counties, must be appointed. The statute contemplates a proceeding in which property in more than two counties could be appraised, and it surely could not be argued that in this event a resident of each must be appointed. From a practical viewpoint, this is the most impartial mechanism that could be provided in the selection of commissioners.

Assuming that each commissioner is imbued with the attitude of the community in which he lives, and has absorbed its local sense of values to the extent it influences his judgment, an assumption which, in view of the oath of impartiality and fairness should not have unlimited indulgence, the commissioner living in the condemning city might tend to keep appraised values low and the commissioner residing in the county where the property is located might tend to keep appraised values high. The resident of one of two or more counties in which the property was located would have the viewpoint of the general locality. Property in his own county and the other counties nearby would be examined by him in the same light.

Where two viewpoints are represented in a board with power to decide a controversy, it is universally good practice, in arbitration and other similar bodies, to select a third member who has the viewpoint of neither side and who stands impartially between. Thus it has been the consistent practice of the Supreme Court in the Third Judicial District in appointing commissioners of appraisal in New York water supply cases to appoint the third member from some part of the judicial district remote from the property being appraised, usually a resident of Rensselaer or Albany Counties. That practice was followed in this instance. Had two members of the Commission been appointed from the locality, one from each county where property was located, under the argument here made by the objecting claimants, and assuming as they do the viewpoint inherent in residence, the Commission would have been overbalanced against the condemning party. It is true the suggestion was made that a Commissioner be appointed from Sullivan, but this would not have changed the situation essentially, since if one were appointed from Sullivan and not from Ulster, the objection now raised by the Sullivan claimants would have been available to those in Ulster. The selection was necessarily made between the two counties and I am satisfied it met the situation as to both of them as well as if made from the other.

Moreover, on the question of equality under the laws, full opportunity to try their cases before former Commissions comprising in each instance a resident of Sullivan was afforded to each of these parties. There was no trial because the parties did not prosecute their claims. (*Matter of Board of Water Supply of City of New York, supra,* 157 Misc. 842, 844.)

If the objections here made ever had force they have been waived. Since the court had jurisdiction of the subject and the parties, the objection to the qualification of the Commissioners is not jurisdictional and may be waived. Even constitutional objections are in such circumstances the subject of waiver. (*Matter of Cooper,* 93 N. Y. 507, 512. See, also, *Matter of Baker,* 173 N. Y. 249, 254, 255.) Where the parties proposed a commissioner, not knowing he was disqualified under the statute, they are deemed to have waived his disqualification. (*Matter of New York, West Shore & Buffalo Ry. Co.,* 35 Hun, 575, cited with approval in *Matter of Baker* [*supra*].) In *Matter of Gilroy* (85 Hun, 424) WILLARD BARTLETT, J., writing for the General Term (p. 428), said: "As to the non-residence of two of the commissioners, that was a matter of which the claimants had notice by the terms of the order appointing them. It did not affect the jurisdiction, and the objection now comes too late, having clearly been waived by the conduct of the claimants "

The special objections to the report on these grounds are overruled, and the report will be considered on its merits. Any party may, if so advised, submit a separate order. Memoranda on the merits, and the record of proceedings before the Commissioners to be submitted within ten days of the receipt of this decision.